RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0033p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────────



UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

MICHAEL B. JOHNSON, II,

*Defendant-Appellant*.

No. 20-6249

─────────────────────

Appeal from the United States District Court
for the Eastern District of Tennessee at Chattanooga.
No. 1:04-cr-00092-1—Curtis L. Collier, District Judge.

Argued:  December 9, 2021

Decided and Filed:  February 23, 2022

Before:  MOORE, CLAY, and READLER, Circuit Judges.

─────────────────────

## COUNSEL

**ARGUED:**  Jennifer Niles Coffin, FEDERAL DEFENDER SERVICES OF EASTERN
TENNESSEE, INC., Nashville, Tennessee, for Appellant.  Brian Samuelson, UNITED STATES
ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee.  **ON BRIEF:**  Jennifer Niles
Coffin, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Nashville,
Tennessee, for Appellant.  Brian Samuelson, UNITED STATES ATTORNEY'S OFFICE,
Knoxville, Tennessee, for Appellee.

       CLAY, J., delivered the opinion of the court in which MOORE, J., joined.  READLER, J.
(pp. 19–32), delivered a separate opinion concurring in part and dissenting in part.

_____

**OPINION**

_____

CLAY, Circuit Judge.    Defendant Michael B. Johnson, II ("Johnson" or "Defendant Johnson") appeals the district court's order denying his motion for a sentence reduction pursuant to section 404 of the First Step Act of 2018 ("First Step Act" or "the Act"), Pub. L. No. 115-391, § 404, 132 Stat. 5194, 5222 (2018).   Johnson argues that the court's 300 month sentence for his 2006 drug and firearm convictions is procedurally and substantively unreasonable.   For the reasons set forth below, we **REVERSE** the district court's order denying Johnson's First Step Act motion, **VACATE** his sentence, and **REMAND** to the district court for further proceedings in accordance with this opinion.

## I.  BACKGROUND

### A.  Factual Background

Johnson's 300 month sentence stems from a 2004 arrest in Chattanooga, Tennessee.   In April of that year, police executed a search warrant at the Chattanooga home of Akil Lee, a friend of Johnson's and a defendant whom the government charged separately in relation to this incident.   After forcefully entering Lee's home, officers stated that they saw two people run out the back door of the house as Johnson entered a bedroom.   The police followed Johnson into the bedroom and found him in an adjacent bathroom where the officers allegedly recognized "crumbs" of what appeared to be "easily an ounce" of crack cocaine in the toilet, which was already flushing when they arrived.   *United States v. Johnson*, 308 F. App'x 968, 970 (6th Cir. 2009); (*see also* Presentence Investigation Report ("PSR"), Case No. 09-5658, ECF No. 5 at 4, ¶ 8).   They did not recover any drugs in the bathroom.   Officers then searched Johnson's person and found 230 dollars in his pocket.   They did not find or recover any drugs from Johnson's person.

Officers then searched Lee's home and found a revolver lying in a box with trash, allegedly along the route that Johnson took into the bedroom and toward the bathroom.   In the living room, they also found a set of digital scales, 0.9 grams of crack cocaine, and a bag

containing 110 white pills.  Johnson initially denied that any of these items were his.  However, when the police interrogated him, Johnson eventually admitted to possessing the firearm and 0.9 grams of crack cocaine.

The district court tried Johnson in December of 2005, and a jury found him guilty of (1) conspiracy to distribute and possess with intent to distribute five grams or more of cocaine base, in violation of 21 U.S.C. §§ 846 and 841(a)(1); (2) possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1); (3) possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1), and 18 U.S.C. § 2; and (4) possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A)(i) and § 2. Following the jury's verdict, Johnson filed a motion for acquittal and/or a new trial.[1]  *Johnson*, 308 F. App'x at 971.  The court denied Johnson's motion and proceeded to sentencing.  *Id.*

In December of 2006, the district court sentenced Johnson to 360 months of imprisonment followed by a four-year term of supervised release.  The court explained that Johnson's sentence reflected the court's belief that he was a career offender for purposes of § 4B1.1 of the United States Sentencing Guidelines ("USSG"), and it rejected Johnson's objection "based on the disparity between crack cocaine and other drugs."  (2006 Sentencing Tr., R. 156, PageID # 290, 299.)

## B.  Procedural History

Johnson filed his first appeal in December of 2006.  He challenged his convictions and the court's 360 month sentence.  *Johnson*, 308 F. App'x. at 969–970.  We affirmed Johnson's convictions, but we vacated his sentence and remanded to the district court for resentencing for two reasons.  *Id.*  First, as to Johnson's career offender status, we concluded that "the district court's determination in this case that defendant's reckless endangerment conviction constituted a 'crime of violence' should be revisited in light of the recent pronouncements in *Begay*," *id.* at 976, which held that crimes of violence required "purposeful, violent, and aggressive conduct," *Begay v. United States*, 553 U.S. 137, 145 (2008).  Second, we determined that "it was

---

[1]During jury deliberations, the court discovered that a juror brought a clear plastic bag containing white powder into the deliberation room.  *Johnson*, 308 F. App'x at 971.  Deciding to deny Johnson's initial motion for mistrial on that basis, the court instructed the jury to base its findings only on the evidence admitted during trial.  *Id.*

procedurally unreasonable for the district judge to sentence defendant under the erroneous belief that he was without authority to consider the 100:1 disparity in treatment of offenses involving crack and powder cocaine." *Johnson*, 308 F. App'x at 977.

Accordingly, the district court resentenced Johnson in May of 2009. It determined that, pursuant to *Begay*, Johnson did not qualify for the career offender guideline enhancement. Thus, the court reasoned that the applicable guidelines range was 200 to 235 months. It nevertheless resentenced Johnson to serve 300 months in prison—65 months longer than the upper end of the corrected guidelines range. The court also imposed a term of five years of supervised release. In doing so, the court relied on Johnson's "long history of criminal activity, the common presence of guns, the frequency and escalating nature of his crimes, and his age" to determine that an above guidelines sentence was required to protect the public. (*Id.* at PageID # 382–83.) The court specifically noted that "[w]hile Defendant appears to be doing well in prison, this is not relevant to the determination of his sentence and whether he has the ability to live peacefully in society." (*Id.* at PageID # 383.) The court underscored that its sentence would "keep Defendant confined until he is in his 50s . . . during the most active years of Defendant's life," at which point his threat to the public "should be substantially diminished and is one society can risk." (*Id.* at PageID # 384–85.)

Johnson again appealed. We affirmed. In doing so, we deferred to the district judge's findings regarding the "need to protect the public from the defendant given the defendant's criminal history." (*Id.* at 3.) We determined that the district court's consideration of the § 3553(a) factors rendered Johnson's sentence substantively reasonable.

Several weeks after this Court affirmed Johnson's new, 300 month sentence, the Supreme Court decided *Pepper v. United States*, 562 U.S. 476 (2011), which held that when a sentence is set aside on appeal, post-sentencing rehabilitation "may be highly relevant to several of the § 3553(a) factors that Congress has expressly instructed district courts to consider at sentencing." 562 U.S. at 491. Accordingly, Johnson petitioned the Court for rehearing. We granted a three judge panel rehearing. In his corresponding pro se brief, Johnson urged this Court to take account of the fact that the district court "refused to consider post-sentencing rehabilitation." (Appellant's Br., Case No. 09-5658, ECF 101 at 3.) Johnson made other arguments as well,

including the claim that his sentence was unlawful pursuant to the Fair Sentencing Act, which Congress passed after the district court's resentencing hearing.

We again affirmed. We concluded that "Johnson's claim that the district court erred by failing to consider his post-sentencing rehabilitation efforts does not render his sentence substantively unreasonable." (Order, Case No. 09-5856, ECF 135 at 4. (quoting *United States v. Lapsins*, 570 F.3d 758, 773 (6th Cir. 2009).) We also made clear that, at the time that the district court filed its 2012 opinion, "Johnson's claim that his sentence violates the Fair Sentencing Act lack[ed] merit because Johnson was both sentenced and resentenced prior to the effective date of the Act." (*Id.* at 3 (citing *United States v. Carradine*, 621 F.3d 575, 580 (6th Cir. 2010).)

But Johnson's efforts to reduce his sentence did not end there. In November and December of 2014, he filed two pro se motions for a sentence reduction pursuant to two 2014 amendments to the sentencing guidelines, which stemmed from the directives of the Fair Sentencing Act. USSG App. C, amend. 782 (2014); USSG App. C. amend 750 (2010); *see also* Pub. L. No. 111-220, §§ 2,3, 8, 124 Stat. 2372, 2374 (2010). The government acknowledged that Johnson qualified for a reduction under Amendment 782; however, it argued that such a reduction was not warranted based on the § 3553(a) factors. Johnson filed two supplemental motions in which he added arguments under Amendments 780 and 788, emphasized his rehabilitative successes, and explained the nature of various infractions he incurred during his time in prison. He also attached letters of support.

The district court denied Johnson's motion. It recognized that Johnson was eligible for a reduction; however, it determined that "[t]he § 3553(a) factors—specifically, the need to protect the public from Defendant's future crimes—counsel against reducing Defendant's sentence." (Order Denying Mot. Reduce Sentence, R. 221, PageID # 806.) Johnson appealed again, and we affirmed once more. We found that "[a]lthough the district court could have found Johnson's rehabilitation argument persuasive, it did not deny Johnson's motion under an erroneous legal standard, and did not abuse its discretion on that basis." (Opinion, Case No. 17-5165, ECF 20 at 1–8.)

Finally, in April of 2020, Johnson filed the pro se motion for a sentence reduction under section 404 of the First Step Act of 2018 that is now before the Court. Counsel filed a supplement. In his motions, Johnson asserted that his drug convictions are now covered by the First Step Act and the Fair Sentencing Act. Johnson stated his correct amended guideline range of 160 to 185 months, and he reiterated his continued rehabilitative efforts.

In response, the government agreed that Johnson is, once again, eligible for a sentencing reduction.[2] But it nevertheless recommended denying Johnson's motion due to his offense conduct and criminal history. The government emphasized that the BOP classified Johnson's risk of recidivism as "high." (Resp., R. 241, PageID # 913.)

Replying to the government, Johnson provided additional information regarding his rehabilitative efforts, including a letter from the executive director of the Second Chance and Jobs for Life reentry program. The letter noted that the program would support Johnson in

---

[2]Indeed, the government stated that Johnson is eligible for a "lesser sentence" and it affirmed that the corrected range is 160 to 185 months under Amendments 782 and 788. (Resp., R. 241, PageID # 908, 911–13.) This is in line with the district court's 2017 order as to Johnson's motions for a sentencing reduction under those amendments, (Order Denying Mot. Reduce Sentence, R. 221, PageID # 806 (recognizing that Johnson was eligible for a reduced sentence pursuant to Amendment 782)), our opinion affirming the district court's order, (Opinion, Case No. 17-5165, ECF 20 at 5 ("The parties agree that Johnson is eligible for a sentence reduction . . . .")), and the district court's opinion as to Johnson's instant motion, (Mem. & Order, R. 243, PageID # 929–30 ("Defendant's new guideline range is one hundred sixty to one hundred eight-five [sic] months imprisonment.")).

On appeal, however, the government questions its prior judgments on this matter, as well as the district court's and ours. In its brief, the government now states that the range for consideration "arguably remains 200 to 235 months" on the theory that the Fair Sentencing Act's amendments to crack cocaine guidelines do not include Amendments 782 and 788, pursuant to this Court's opinion in *United States v. Maxwell*. *Maxwell*, 991 F.3d 685, 689 (6th Cir. 2021) (concluding that the First Step Act asks the court to calculate the applicable guidelines "'as if' the crack-cocaine sentencing range had been reduced under the Fair Sentencing Act of 2010, not as if other changes had been made to sentencing law in the intervening years.").

*Maxwell* does not dictate our analysis here. Indeed, Amendments 782 and 788 are retroactive, unlike the changes in sentencing law at issue in that case, namely, changes to career offender designations. *Maxwell*, 991 F.3d 685 at 689; *see also United States v. McCall*, 20 F.4th 1108, 1112–13 (6th Cir. 2021) (citing *United States v. Jarvis*, 999 F.3d 442, 449 (6th Cir. 2021) (Clay, J., dissenting) (noting that this Court's precedent in the First Step Act setting does not prevent the Court from considering a sentencing disparity created by a *non-retroactive* sentencing provision)); *see, e.g.*, *United States v. Montgomery*, 998 F.3d 693, 697, 700 (6th Cir. 2021) (vacating a sentence imposed in a First Step Act case where the district court failed to calculate the current amended range to include an intervening, *non-retroactive* amendment). Additionally, Amendments 782 and 788 carry out the Fair Sentencing Act's directive that the United States Sentencing Commission "promulgate the guidelines, policy statements, or amendments provided for in this Act as soon as practicable," including "cocaine sentencing disparit[ies]" accounted for in sections 2 and 3 of that Act. Pub. L. No. 111-220, §§ 2,3, 8, 124 Stat. 2372, 2374 (2010). Accordingly, looking at Johnson's case "'as if' the crack-cocaine sentencing range had been reduced under the Fair Sentencing Act," Johnson's corrected range is indeed 160 to 185 months. *Maxwell*, 991 F.3d 685, 689 (6th Cir. 2021).

securing housing and employment following his release. Finally, Johnson's reply underscored Congress' intent to reduce the "sentencing disparity between all crack and powder cocaine offenders, high- and low-level alike," when it enacted the Fair Sentencing Act—now applicable to "all defendants sentenced for a crack offense" before its passage. (Reply to Resp., R. 242, PageID # 919–21.)

Although the district court found that Johnson is eligible for a sentence reduction, it denied his motion. The court stated that it "conducted a renewed consideration of the § 3553(a) factors and conclude[d] the factors weigh[ed] against reducing [Johnson]'s sentence." (Mem. & Order, R. 243, PageID # 930.) The court reiterated Johnson's offense conduct, his criminal history, his risk of reoffending, and the need to protect the public, among "the other factors enumerated in § 3553(a)." (*Id.* at PageID # 930–32.) It also referenced Johnson's rehabilitative efforts and stated that it "considered the kinds of sentences available and the sentencing range, and the need to avoid unwarranted sentencing disparities." (*Id.* at PageID # 932.) Nevertheless, the court determined that:

> While Defendant's post-sentencing rehabilitation efforts are commendable, the nature and circumstances of Defendant's offense and the need to protect the public, primarily based on Defendant's criminal history, outweigh those efforts. As the Court noted at Defendant's resentencing hearing, based on Defendant's lengthy criminal history, which commonly involved firearms and violence, a sentence of three hundred months remains sufficient, but not greater than necessary, to promote respect for the law and protect the public from further crimes of Defendant.

(*Id.* at PageID # 932.)

## II. DISCUSSION

### A. Standard of Review

This Court reviews the denial of a motion for a sentence reduction under the First Step Act and 18 U.S.C. § 3582(c)(1)(B) for abuse of discretion. *United States v. Smith*, 959 F.3d 701, 702 (6th Cir. 2020); *United States v. Flowers*, 963 F.3d 492, 498 (6th Cir. 2020). "A district court abuses its discretion when it applies the incorrect legal standard, misapplies the correct

legal standard, or relies upon clearly erroneous findings of fact." *United States v. Moore*, 582 F.3d 641, 644 (6th Cir. 2009).

## B. Analysis

"[L]ike all sentences imposed by the district court," a First Step Act sentencing decision "must . . . be procedurally . . . [and] substantively reasonable . . . ." *United States v. Boulding*, 960 F.3d 774, 783 (6th Cir. 2020) (citing *Smith*, 959 F.3d at 703).

### i. Procedural Reasonableness

Johnson's sentence, left intact when the district court denied his First Step motion, is procedurally reasonable. A sentence is procedurally reasonable if the district court:

> (1) properly calculated the applicable advisory Guidelines range; (2) considered the other [18 U.S.C.] § 3553(a) factors as well as the parties' arguments for a sentence outside the Guidelines range; and (3) adequately articulated its reasoning for imposing the particular sentence chosen, including any rejection of the parties' arguments for an outside-Guidelines sentence and any decision to deviate from the advisory Guidelines range.

*United States v. Bolds*, 511 F.3d 568, 581 (6th Cir. 2007). In other words, "a sentence is procedurally reasonable where 'the trial court follows proper procedures and gives adequate consideration to [the § 3553(a)] factors.'"[3] *United States v. Perez Rodriguez*, 960 F.3d 748, 753 (6th Cir. 2020). Additionally, where a district court "select[s] a sentence based on clearly erroneous facts," it "necessarily abuses its sentencing discretion." *Bolds*, 511 F.3d at 579.

In the First Step Act setting, a district court is required to conduct a "complete review of the resentencing motion on the merits," and must "consider the guidelines and policy statements, along with the other [§] 3553(a) factors." *Boulding*, 960 F.3d at 784 (quoting *United States v. Allen*, 956 F.3d 355, 358 (6th Cir. 2020)). It must also adequately explain its resentencing decision to allow for meaningful appellate review. *United States v. Smith*, 958 F.3d 494, 499–

---

[3]As Judge Moore emphasized in *United States v. Adams*, "[t]he determination of what falls in the procedural versus substantive prong of this analysis, however, is 'not fully settled within our Circuit.'" *Adams*, 873 F.3d 512, 520 (6th Cir. 2017) (quoting *United States v. Albaadani*, 863 F.3d 496, 504 (6th Cir. 2017). Accordingly, it is worth emphasizing that while our procedural reasonableness assessment looks at whether the district court gave "adequate consideration" to the § 3553(a) sentencing factors, this "adequacy" analysis is specifically related to the *process* the district court followed, rather than the *weight* given to any sentencing factor.

500 (6th Cir. 2020). "However, '[t]he appropriateness of brevity or length, conciseness or detail [in the court's explanation]. . . depends upon the circumstances,' and '[t]he law leaves much, in this respect, to the judge's own professional judgment.'" *Id.* at 500 (quoting *Chavez-Meza v. United States*, 138 S. Ct. 1959, 1964 (2018)).

The district court met these *procedural* requirements. First, it correctly determined that Johnson is eligible for a sentence reduction pursuant to section 404 of the First Step Act. It then accurately calculated his corrected guidelines range.[4] The court next "conducted a renewed consideration of the § 3553(a) factors and conclude[d] the factors weigh[ed] against reducing Defendant's sentence." It recounted Johnson's offense conduct and described the extent and nature of his criminal history. The court then stated that it:

> considered the other factors enumerated in § 3553(a), including the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate specific and general deterrence, and provide Defendant with needed education and training, medical care, or other correctional treatment.

(*Id.* at 932.) And the court described how it applied the § 3553(a) factors to Johnson's case. It referenced Johnson's rehabilitative efforts, and stated that it "considered the kinds of sentences available . . . and the need to avoid unwarranted sentencing disparities." (*Id.*)

After following this procedure, the court nevertheless found that "[w]hile Defendant's post-sentencing rehabilitation efforts are commendable, the nature and circumstances of Defendant's offense and the need to protect the public, primarily based on Defendant's criminal history, outweigh those efforts." (*Id.*) It emphasized the presence of "firearms and violence" in Johnson's prior offenses, and it denied his motion by concluding that "a sentence of three hundred months remains sufficient, but not greater than necessary to promote respect for the law and protect the public from further crimes of Defendant." (*Id.*)

Accordingly, there is no error in the district court's *process* here. The court applied the § 3553(a) factors to Johnson's case, and it made clear that, although Johnson's sentence is now 115 to 140 months greater than the applicable guidelines range, it believed the § 3553(a) factors

---

[4]*See supra* note 2.

weighed against a reduction. The court personalized its analysis by noting Johnson's prior offenses as well as their factual backgrounds, and it relied on truthful information.

Johnson argues that the district court improperly relied on his criminal history and that it failed to sufficiently take account of his advanced age and rehabilitative efforts when it considered his risk of reoffending. He emphasizes that, because the new guidelines range already accounts for his criminal history and the nature of his prior convictions, an upward variance based on those factors is excessive and essentially duplicative. Johnson also challenges the court's reliance on the "high risk" classification assigned to him by BOP in 2017.[5] (Appellant's Br. 33–34; 45–48.) However, these arguments go to "whether the sentencing court gave reasonable *weight* to each relevant [§ 3553(a)] factor," which must be considered in evaluating the *substantive* reasonableness of Johnson's sentence. *United States v. Boucher*, 937 F.3d 702, 707 (6th Cir. 2019) (emphasis in original); *see also United States v. Lightning*, 835 F. App'x 38, 40 (6th Cir. 2020); *Adams*, 873 F.3d at 517–18, 520.

Johnson's sentence, left intact when the district court denied his motion for a sentence reduction pursuant to the First Step Act, is procedurally reasonable. But we must also consider the substantive reasonableness of the district court's judgment.

### ii. Substantive Reasonableness

Johnson's sentence is substantively unreasonable. Here, we consider whether "the length of a sentence conforms with the sentencing goals set forth in 18 U.S.C. § 3553(a)," and "whether the district judge abused his discretion in determining that the § 3553(a) factors supported the sentence imposed." *United States v. Sherrill*, 972 F.3d 752, 768 (6th Cir. 2020) (quoting *Perez Rodriguez*, 960 F.3d at 753). In other words, the question turns on whether the district court imposed a sentence that is "greater than necessary," even if it "follow[ed] proper procedures and

---

[5]Importantly, Johnson does not challenge this classification as false or based on untrue facts; he instead challenges the importance assigned to it by the district court, given other available information and the limits of the classification's "predictive power." (Appellant's Br. 33, 45–48.) But because Johnson does not seek to establish that the classification "is materially false or unreliable," any undue reliance on the classification should be reviewed for substantive unreasonableness. *Adams*, 873 F.3d 517–18, 520.

[gave] adequate[6] consideration to [the § 3553(a)] factors." *Holguin-Hernandez v. United States*, 140 S. Ct. 762, 766–67 (2020). A sentence may be substantively unreasonable, or "too long," *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018), "when the district court . . . fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor," *United States v. Conaster*, 514 F.3d 508, 520 (6th Cir. 2008).

The substantive reasonableness inquiry considers the totality of the circumstances, including "the extent of any variance from the Guidelines range." *Bolds*, 511 F.3d at 581 (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). Accordingly, a sentence above the guidelines range "requires the district court to 'consider the extent of the deviation to ensure that the justification is *sufficiently compelling* to support the *degree* of variance.'" *Perez Rodriguez*, 960 F.3d at 754 (quoting *Gall*, 552 U.S. at 50) (emphasis added). In doing so, the district court must explain "how the present case is different from the typical or mine-run case" within the "'heartland' to which the Commission intends individual Guidelines to apply." *Id.* (quoting *Kimbrough v. United States*, 552 U.S. 85, 109 (2007)). Relevant here, "[t]he greater the variance, the more compelling the justification must be." *Id.* And when a sentence "departs from the advisory range in a 'mine-run case,'" variance justifications warrant closer review by this Court. *Id.*

Considering these standards, the district court abused its discretion here. Although the court "follow[ed] proper procedures and [gave] adequate consideration to [the § 3553(a)] factors," *Holguin-Hernandez*, 140 S. Ct. at 766–67, and although it was not "require[d]" to reduce Johnson's sentence, *Maxwell* 991 F.3d at 689, the court's analysis gave undue weight to two of the § 3553(a) factors. Specifically, the court unduly weighed factor (a)(1), the nature of the offense and Johnson's criminal history and characteristics, and factor (a)(2), the need for the sentence to deter future criminal conduct and protect the public from future crimes of the defendant. 18 U.S.C. § 3553(a). Simultaneously, the district court gave too little weight to another § 3553(a) factor, namely, "the need to avoid unwarranted disparities among defendants with similar records who have been found guilty of similar conduct." *Id.* The district court's sentence is substantively unreasonable given Johnson's decreased guidelines range of 160 to 185

---

[6]*See supra* note 3.

months and this case's resemblance to the "'heartland' to which the Commission intends . . . [the] Guidelines to apply." *Perez Rodriguez*, 960 F.3d at 754 (quoting *Kimbrough*, 552 U.S. at 109 (2007)).

### a. Nature of Johnson's Offense and Criminal History

In denying Johnson's First Step Act motion, the district court focused on his offense conduct and his criminal history. We begin by considering each of these factors in turn.

As the district court noted in its opinion, Johnson's convictions stem from an arrest warrant that the police executed at his friend's house in 2004. *Johnson*, 308 F. App'x at 970. After entering the home, officers allegedly saw Johnson run into a bathroom and flush "what appeared to 'easily be an ounce' of crack cocaine" down the toilet. (Mem. & Order, R. 243, PageID # 930–31.) The officers apprehended Johnson and seized 230 dollars from his pocket. They also found a revolver "along the route defendant had taken to the bathroom." (*Id.* at 930.) In the living room, the police found digital scales on top of a speaker, 0.9 grams of crack cocaine, and a bag with 110 unidentified white pills. Johnson admitted to possessing the firearm and the 0.9 grams of crack cocaine that the police found in the living room.

This conduct, while unquestionably subject to penalties under the four counts that Johnson was charged and convicted for, does not stand out from similar cases in which we have applied sentences within or below the guidelines range. *See United States v. Osborne*, 860 F. App'x 77, 82 (6th Cir. 2021) (affirming a sentence where the defendant's conduct included possession of firearms and crack-cocaine distribution within 1000 feet of a school, given that the "sentence that remained in place [was] still *within the recalculated Guidelines range*") (emphasis added)); *see also United States v. Burke*, No. 2:08-CR-63(1), 2019 WL 2863403, at *1, *4 (E.D. Tenn. July 2, 2019) (reducing a sentence to the lower end of the recalculated guidelines range where the defendant's offense conduct included possession with intent to distribute fifty grams or more of cocaine base in addition to firearm possession); *United States v. Beamus*, 2No. 5:02-cr-89-JMH-1, 2020 WL 5870181, at *1, *3, *5 (E.D. Ky. Sept. 29, 2020) (reducing a sentence for two crack-cocaine and firearms offenses below the recalculated range for those offenses); *see also United States v. Jackson*, 515 F. Supp. 3d 708, 713–14 (E.D. Mich. 2021) (concluding that

an aggregate sentence warranted a reduction as to the defendant's crack-cocaine offenses where the defendant's offense conduct included possession of five or more grams of crack cocaine, possession with intent to distribute heroin, and other firearms offenses).

Our prior cases carry out Congress' clear intent in passing the First Step Act to retroactively apply the Fair Sentencing Act. Courts can now reduce long sentences in cases like Johnson's because Congress determined that shorter periods of incarceration sufficiently reflect and account for the dangerous, high-caliber nature of the crimes that those statutes now cover. First Step Act of 2018, Pub L. No. 115-391, § 404(a), 132 Stat. 5194; Fair Sentencing Act of 2010, Pub L. No. 111-220, §§ 2–3, 124 Stat. 2372. Contrary to the dissent's implication, a defendant need not show that he is a "model felon" to seek and obtain a reduced sentence under these provisions. Dissent at 26.

Nor does Johnson's criminal history, which placed him in Criminal History Category VI, render him an outlier in relation to other criminal defendants charged and convicted for similar offenses. In fact, Johnson's criminal history places him within the landscape of "typical" defendants whose sentences have nevertheless been reduced pursuant to the First Step Act. *See Beamus*, 2020 WL 5870181, at *1, *5 (reducing a sentence as to two crack-cocaine and firearms offenses below the recalculated range for those offenses, where the defendant received a Criminal History Category of VI); *Jackson*, 515 F. Supp. 3d 708, 713–14 (E.D. Mich. 2021) (concluding that a sentencing reduction was warranted, where the defendant was a career offender and his instant offense conduct included crack cocaine, heroin, and firearms offenses). "[B]ecause the Guidelines already account for a defendant's criminal history, imposing an extreme variance based on that same criminal history is inconsistent with 'the need to avoid unwarranted sentencing disparities among defendants with *similar records* who have been found guilty of *similar conduct*.'" *United States v. Warren*, 771 F. App'x 637, 642 (6th Cir. 2019) (quoting *United States v. Bistline*, 665 F.3d 758, 767 (6th Cir. 2012); *United States v. Borho*, 485 F.3d 904, 912–13 (6th Cir. 2007)) (emphasis added).

The government heavily relies on the district court's 2009 resentencing memorandum in an attempt to distinguish Johnson's criminal history from similar cases. It cites the district court's emphasis on the "frequency and escalating nature" of Johnson's prior offenses, along

with the "presence of guns and violence," to justify the district court's 115-to-140-month upward variance. (Appellee's Br. 25, 27.) However, the government concedes that the guidelines account for the "severity" of Johnson's prior offenses, (*id.* at 16); the "frequency" of Johnson's offenses, as defined by the Sentencing Commission, (*id.* at 15); and, importantly, the *relationship* between Johnson's offenses and their timing, given that the guidelines ensure that "a defendant receives additional criminal history points 'if [he] committed the instant offense while under any criminal justice sentence,'" (*id.* at 15).

While the government recognizes that "Johnson's sentence is a harsh one," and "is longer than those received by many other offenders," it fails to distinguish Johnson's offense conduct and/or criminal history from "typical" or "mine-run" cases featuring comparable offenses and significantly lower sentences. (*Id.* at 24); *Perez Rodriguez*, 960 F.3d at 754 (quoting *Kimbrough*, 552 U.S. at 109 (2007)).

### b. Need for Sentence to Deter Future Conduct and Protect the Public

In addition to Johnson's offense conduct and criminal history, the district court cited "the need to protect the public . . . from further crimes of Defendant" as a basis for maintaining Johnson's 300 month sentence.[7] (Mem. & Order, R. 243, PageID # 932.) The court referenced its prior reasoning from Johnson's resentencing, where the court stated that the 300 month sentence would "keep Defendant confined until he is in his 50s," at which point the threat he poses to the public "should be substantially diminished and is one society can risk." [8] (2009 Mem., R. 166, PageID # 384–85.)

---

[7]In its order denying Johnson's First Step Act motion, the district court briefly referenced Johnson's "high risk" of recidivism classification by the BOP. (Mem. & Order, R. 243, PageID # 931.) Johnson challenges the court's reliance on this classification as "unfounded." (Appellants' Br. 45–48.) Given Johnson's concession that his background and Criminal History Category place him at a statistically high risk of reoffending, its specific inclusion does not affect the deterrence analysis here and is thus immaterial. *See supra* note 5.

[8]Importantly, the district court resentenced Johnson in 2009, before Congress passed the Fair Sentencing Act and the First Step Act. At that point, the district court employed this reasoning to support an upward variance of 65 months from the upper end of the applicable guidelines range, a 28% increase. Now, the government and the district court use the same reasoning to support an upward variance of 115 months from the upper end of the applicable guidelines range, which represents a 38% increase. At the same time, the district court provides no new justifications. *See also Perez Rodriguez*, 960 F.3d at 754 ("The greater the variance, the more compelling the justification must be.").

The district court gave too much weight to this § 3553(a) factor without providing sufficient justification. *See generally Perez Rodriguez*, 960 F.3d at 754. As Johnson puts it, "the district court failed to adequately explain why a nearly ten-year upward variance [from the upper end of the applicable guidelines range] is necessary to protect the public." (Appellant's Br. 26.) Admittedly, Johnson's criminal history statistically increases his risk of reoffending. But that risk is already factored into the lower, applicable guideline range. Indeed, it is the reason why, when calculating a given range, district courts must use a sentencing table that cross-references a defendant's offense level with his Criminal History Category. *See* Sentencing Table, United States Sentencing Commission, *Guidelines Manual*, Ch. 5 Pt. A (Nov. 1, 2018).

In this case, Johnson's criminal history already *doubled* the range that applies to his drug charges, insuring that he will be imprisoned for a greater length of time *because of* that risk. (*See* Appellant's Br. 36 (explaining that Johnson's guideline range for his drug offense would be 51 to 63 months if he was in Criminal History Category I, but because he is in Criminal History Category VI, the range is 100 to 125 months).) And as Johnson and the district court both point out, all sentences that are not life sentences assume that potentially risky defendants will be released at the end of their term—increased risk to the public notwithstanding.

Accordingly, to justify a 115 to 140-month upward variance, Johnson's risk of reoffending must be substantiated by considerations *beyond* those that the sentencing guidelines already contemplate. *See Perez Rodriguez*, 960 F.3d at 754. But here, there are no additional facts substantiating such a risk. Similarly, there are no facts suggesting that Johnson poses a risk beyond the one that the district court measured and deemed appropriate when it applied a 65-month—rather than a 115-month—upward variance in 2009.

---

The dissent acknowledges this problem; indeed, it indicates that, "[a]s the case returns to the district court, that court now has the opportunity to investigate with more consideration some of the issues it justifiably did not explore in any detail" in the analysis that it developed prior to the passage of the First Step Act. Dissent at 17. It then instructs the district court to "investigate with more consideration some of the issues" that allegedly differentiate Johnson's case "from the typical or mine-run case" within the "'heartland' to which the Commission intends individual Guidelines to apply." *Id.*; *Perez Rodriguez*, 960 F.3d at 754 (quoting *Kimbrough v. United States*, 552 U.S. 85, 109 (2007)); *but see supra* pp. 12–14.

Indeed, Johnson has not incurred any convictions or meaningful infractions while in prison.[9]    Instead, Johnson has made "commendable" progress in his "post-sentencing rehabilitation efforts:" he has stayed in touch with "several supportive family members," "received thirty-eight certificates," and "completed several educational courses." (Mem. & Order, R. 243, PageID # 932.) Specifically, Johnson has taken several writing courses and has also studied personal growth, business administration, digital media, and Spanish. He has worked as a "unit orderly" and, critically, he was transferred to a medium security facility in 2011 because of his good behavior. Relevant to Johnson's post-incarceration risk to the public, Johnson also secured acceptance to the Second Chance and Jobs for Life program, which will assist him with housing and employment when he is released from prison. Johnson is now 48 years old and has a decreased risk of recidivism due to his age. U.S. Sent'g Comm'n, *The Effects of Aging on Recidivism Among Federal Offenders* 22 (2017).

The district court's analysis regarding Johnson's risk of reoffending and its need to protect the public is not "*sufficiently compelling* to support the *degree* of variance" in this case. *Perez Rodriguez*, 960 F.3d at 754 (quoting *Gall*, 552 U.S. at 50) (emphasis added). Instead, the court's analysis once again fails to distinguish Johnson's case from "typical" cases featuring lower sentences. *Id.* at 754 (quoting *Kimbrough*, 552 U.S. at 109).

### c. Need to Avoid Unwarranted Sentencing Disparities

"[T]he need to avoid unwarranted sentencing disparities sits at the heart of our substantive reasonableness review." *Lightning*, 835 F. App'x at 43. Johnson's 300 month sentence currently represents the "greatest possible upward variance" for his drug convictions. *Warren*, 771 F. App'x at 641. While it initially "fell [fifteen] years below the statutory maximum for those offenses, even while it included a five-year statutory gun enhancement," Johnson's sentence is now "the statutory maximum for [his drug] offenses, plus a consecutive

---

[9]The government stated that Johnson has "incurred disciplinary sanctions on ten separate occasions . . . [a]mong other things, he was sanctioned for using drugs in December 2018 and possessing a non-hazardous tool in June of 2017 and March 2013." (Resp. Mot. to Reduce Sentence, R. 241, PageID # 913.) While the district court declined to consider these infractions because the government failed to provide any proof to support them, the government's survey seemingly did not uncover any violent or criminal offenses during Johnson's nearly two decades of incarceration. (Mem. & Order, R. 243, PageID # 930 n.1.)

five years for the statutory gun enhancement." (Appellant's Br. 4; *see also* Mem. & Order, R. 243, PageID # 930); *see* 21 U.S.C. § 841(b)(1)(C). At the same time, Johnson's case is a "mine-run case:" one that "is a normal offense for someone with [Defendant's] specific sentencing enhancements and criminal history category," and which is well-represented by the Sentencing Commission's applicable guidelines range. *Lightning*, 835 F. App'x at 41.

Johnson cites to Sentencing Commission data showing that most crack offenders in his Criminal History Category are now sentenced below their applicable guidelines ranges.[10] In doing so, Johnson confirms that his case is an outlier. As the government itself points out, it is no secret that Johnson's sentence is "longer than usual." (Appellee's Br. 19.) While the government maintains that "the record contains a thorough explanation of the court's belief that an above-Guidelines sentence was necessary in this case," a close look at Johnson's offense conduct, criminal history, and risk of reoffending suggests otherwise. *See supra* pp. 12–16.

Even if the district court did, in fact, consider "the kinds of sentences available and the sentencing range, and the need to avoid unwarranted sentencing disparities," it did not sufficiently account for this factor. (Mem. & Order, R. 243, PageID # 932.) This is especially true given that the court's justifications for its 300 month sentence remained the same over the course of more than ten years, even though that sentence represented an increasingly larger variance over that period of time. But we have emphasized that "[t]he greater the variance, the more compelling the justification must be." *Perez Rodriguez*, 960 F.3d at 754. Critically, during those same ten years, Congress made it clear that district courts could view offense-and-criminal-history combinations like Johnson's through a more lenient lens, given the unjust nature of earlier sentencing schemes. *See generally* First Step Act, § 404(a), 132 Stat. 5194; Fair Sentencing Act, §§ 2–3, 124 Stat. 2372. Johnson also aged and made significant rehabilitative progress during that time.

---

[10]The government argues that the Court need not consider that data because Johnson did not present it to the district court. However, as Johnson points out, he "invoked the need to avoid unwarranted disparities with similarly situated crack offenders who do not receive above-range sentences" in the district court. (Appellant's Reply 4.) And this Court may take notice of the Sentencing Commission's data "as facts that are 'not subject to reasonable dispute because [they] . . . can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned.'" (*Id.* at 6 (quoting Fed. R. Evid. 201(b)(2); Fed. R. App. P. 10(e)(3))); *see also* Fed. R. Evid. 201(d).)

All told, the district court gave too little weight to "the need to avoid unwarranted disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). At the same time, the court unduly weighed the nature of Johnson's offense, his criminal history and characteristics, and the need for the sentence to deter future criminal conduct and protect the public. *See generally* 18 U.S.C. § 3553(a). Johnson's sentence is thus substantively unreasonable. The district court abused its discretion in maintaining a 115-month upward variance given this case's similarity to "typical" cases where guidelines sentences are sufficient but not greater than necessary to meet the goals of sentencing. *See Perez Rodriguez*, 960 F.3d at 754 (quoting *Kimbrough*, 552 U.S. at 109); 18 U.S.C. § 3553(a).

## CONCLUSION

For the reasons set forth above, we **REVERSE** the district court's order denying Johnson's First Step Act motion, **VACATE** Johnson's sentence, and **REMAND** to the district court for further proceedings in accordance with the Court's opinion.

---

**CONCURRING IN PART AND DISSENTING IN PART**

---

READLER, Circuit Judge, concurring in part, dissenting in part. If past truly is prologue, this should have been an easy affirmance. Today's appeal marks the fourth time we have reviewed Michael Johnson's 2009 sentence. *See United States v. Johnson* (*Johnson IV*), 718 F. App'x 345, 346 (6th Cir. 2017); *United States v. Johnson* (*Johnson III*), 09-5658, slip op. at 4 (6th Cir. Mar. 14, 2012); *United States v. Johnson* (*Johnson II*), 09-5658, slip op. at 4 (6th Cir. Feb. 18, 2011); *see also United States v. Johnson* (*Johnson I*), 308 F. App'x 968, 976 (6th Cir. 2009). Without argument and with little fanfare, we have repeatedly blessed his 300-month sentence. As that sentence was largely the product of Johnson's unique criminal history, a fixed consideration throughout these proceedings, an affirmance here writes itself.

It is far more difficult to rewrite history. But the majority opinion believes it is up to the task. To find error with Johnson's thrice-affirmed sentence, the majority opinion ignores the governing deferential standard of review and instead moonlights as a district court, engaging in a plenary resentencing and reweighing the various sentencing factors de novo while rejecting the justifications thoughtfully articulated by the district court. The majority opinion then overrides two prior circuit panels—six different Article III judges—all of whom affirmed Johnson's sentence. And then it distorts the law, reading Section 404 of the First Step Act as a license to reweigh and reassess Johnson's settled criminal history, when all the Act authorizes a district court to do is to apply changes to the statutory penalties for trafficking in crack cocaine retroactively.

While I agree with the majority opinion that the district court committed no procedural error, I disagree with its finding of substantive unreasonableness, which turns on nothing more than a difference of opinion as to the length of a sentence. That cannot be the basis for reversal.

I.

The majority opinion begins with the flawed premise that the district court imposed a sentence 115 months above the applicable Guidelines range of 160 to 185 months. That understanding is unfaithful to both the First Step Act and our precedent. When first determining the Guidelines "range that will form the basis for the reduced sentence" under Section 404 of the First Step Act, a district court must, under our precedent in *United States v. Maxwell,* "alter just one variable in the original sentence"—how the Fair Sentencing Act of 2010 would have reduced the statutory sentencing range. 991 F.3d 685, 689–90 (6th Cir. 2021). This result flows straight from the First Step Act's text, which instructs district courts to look to "sections 2 and 3 of the Fair Sentencing Act" (the sections reducing the statutory penalties for certain federal narcotics offenses) to determine the Fair Sentencing Act's effect on the original sentence. *See* First Step Act of 2018, § 404(b), Pub. L. No. 115-391, 132 Stat. 5194, 5222 (First Step Act). A resentencing under Section 404, in other words, is limited in scope and does not authorize the district court to "recalculate[] the advisory guidelines range according to the law at the time of the request." *Maxwell*, 991 F.3d at 689.

Yet the majority opinion casts that all aside in favor of a plenary resentencing. It relies on a Guidelines range (160 to 185 months) tied to the Sentencing Commission's 2014 amendment to the Guidelines, not the changes in sections 2 and 3 of the Fair Sentencing Act. *See* U.S.S.G. Supp. App. C. Amend. 782 (eff. Nov. 1, 2014). True, those 2014 amendments have a tie to the Fair Sentencing Act: they stem from the Act's directive to make additional changes to the Guidelines that the Sentencing Commission "determines necessary." *See* Fair Sentencing Act, Pub. L. No. 111-220, § 8, 124 Stat. 2372, 2374 (2010). But that directive appears in a different section of the Fair Sentencing Act, not "sections 2 and 3," the sections that give rise to a First Step Act resentencing under Section 404. And because "sections 2 and 3" did not affect Johnson's original Guidelines range, the applicable Guidelines range here remains 200 to 235 months, meaning the upward variance at issue is 65 (not 115) months. Any other conclusion would run afoul of 18 U.S.C. § 3582(c)(1)(B), which prohibits a federal court from modifying a defendant's sentence unless the modification is "expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure."

What does the majority opinion have to say about *Maxwell*? Citing a perpetual dissent from our compassionate release case law—one that has no bearing on Johnson's motion—the majority opinion characterizes *Maxwell*'s holding as limited to Guidelines changes that are non-retroactive. Maj. Op. at 6 n.2 (citing *United States v. Jarvis*, 999 F.3d 442, 449 (6th Cir. 2021) (Clay, J., dissenting)). By this, the majority opinion presumably means that the initial Guidelines calculation for a Section 404 motion can, for some unsaid reason, include any retroactive Guidelines change. How this result squares with the clear language of *Maxwell* or the First Step Act, however, is anyone's guess. Congress knew how to apply retroactive sentencing changes, including changes to the Guidelines, when it crafted the First Step Act. *See, e.g.*, 18 U.S.C. § 3582(c)(2). In this case, it did so in narrow fashion to effectuate sections 2 and 3 of the Fair Sentencing Act. To the extent we have applied the 2014 Guidelines amendment to an initial Guidelines range in resolving a Section 404 motion without grappling with *Maxwell* or the text of Section 404, *see, e.g., United States v. Montgomery*, 998 F.3d 693, 697, 700 (6th Cir. 2021), that unexplored consideration carries no precedential value, *see Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents."). And in any event, as we decided *Maxwell* before we decided *Montgomery*, *Maxwell* controls. *See Jarvis*, 999 F.3d at 446–47 (majority opinion).

Invoking the canon against absurdity, Johnson responds that applying the original Guidelines range would be the "very opposite of Congress's remedial purpose and expectations in enacting section 404." The majority opinion voices a similar refrain, announcing that the statute's sole purpose is to remedy "long sentences in cases like Johnson's." Maj. Op. at 13. That purposivist approach had its day in the sun some years ago. *See, e.g.*, *United Steelworkers of Am. v. Weber*, 443 U.S. 193, 201 (1979) (rejecting "reliance upon a literal construction" in favor of the "familiar rule that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit nor within the intention of its makers") (citation omitted). But today, judges across the philosophical spectrum agree that we do not divine a law's meaning from some overarching purpose. *See Kloeckner v. Solis*, 568 U.S. 41, 55 n.4 (2012) (recognizing that "even the most formidable argument concerning the statute's purpose" cannot overcome clear textual commands). Legislation, after all, is the "art of compromise," with "no statute yet

known pursu[ing] its stated purpose at all costs." *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1725 (2017) (cleaned up).  Rather than purpose, we look (as we did in *Maxwell*) to a statute's text, which forecloses Johnson's preferred approach.  991 F.3d at 689 ("The text of the legislation goes a long way to answering the first question.").

At all events, any supposed absurdity begins to look quite cogent when one considers the First Step Act's text along with the broader body of federal sentencing law.  Section 404 of the First Step Act, again, authorizes district courts to "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010" were in effect at the time of the underlying offense.  *See* First Step Act, § 404(b).  By that command, Section 404 aims to reduce sentencing disparities between pre- and post-Fair Sentencing Act crack cocaine offenders resulting from the altered statutory sentencing ranges.  Doing so seemingly would be most meaningful in a case where the pre-Fair Sentencing Act mandatory minimum sentence supplanted all or some of a defendant's Guidelines range of imprisonment.  But for pre-Fair Sentencing Act offenders (like Johnson) who had Guidelines ranges well above the mandatory minimum, retroactive application of sections 2 and 3 of the Fair Sentencing Act has far less relevance.  Notwithstanding those plain textual commands, the majority opinion opts to elevate its preferred purpose for Section 404 over that text, transforming Section 404 into a one-size-fits-all tool for reducing all lengthy sentences.

So, why, you might ask, would the First Step Act's sentence reduction provisions not sweep in broader changes in the law, such as Guideline changes, that could benefit relevant offenders?  Because there was no need.  In the Sentencing Reform Act of 1984, Congress provided a mechanism for a prisoner who was sentenced based on a Guidelines range that the Commission later lowered to seek a sentence reduction, so long as the Commission separately authorized the retroactive application of any amendment.  *See* 18 U.S.C. § 3582(c)(2).  As Johnson well knows, the Commission in 2014 amended the drug quantity table that affected his 2009 Guidelines range and made that change retroactive.  *See* U.S.S.G. Supp. App. C. Amend. 782 (eff. Nov. 1, 2014); *see also* U.S.S.G. § 1B1.10, cmt. 6.  Collectively, these changes in the law offered Johnson the opportunity to seek a sentence reduction based on the 2014 amendments.  *See* U.S.S.G. § 1B1.10(b)(1)–(2).

Johnson took Congress and the Commission up on their offer. In 2016, Johnson argued before the district court, as he does now, that he was entitled to a new sentence "consistent with the § 3553(a) factors" that accounted for the "lowering of the drug guidelines" and how he had "constructively" "used" his time in prison. The district court rejected these arguments, emphasizing Johnson's "extensive and violent criminal history." We unanimously affirmed that determination. *Johnson IV*, 718 F. App'x at 349. In so doing, we rejected Johnson's central argument that the district court failed to consider his conduct since his 2009 resentencing. *Johnson IV*, 718 F. App'x at 349. The framework for assessing Johnson's request for a sentence reduction in 2016, it bears emphasizing, is largely identical to the one the majority opinion and Johnson press here—that is, start with a revised Guidelines range of 160 to 185 months before weighing the § 3553(a) factors. *See* U.S.S.G. § 1B1.10, cmt. 1(B) (noting the general factors for determining whether to reduce a sentence under § 3582(c)(2), including the § 3553(a) factors and post-sentencing conduct); *see also Dillon v. United States*, 560 U.S. 817, 827 (2010) (recognizing that under § 3582(c)(2) a court must first gauge the Guidelines range as if the "relevant amendment" had "been in effect at the time of the initial sentencing" before considering how the § 3553(a) factors applied to the "amended range"). With Johnson having unsuccessfully pressed these arguments in 2016, we should not be in the business of rewriting that story's end.

All things considered, the majority opinion is wrong to utilize the revised Guidelines range as the starting point for Johnson's current Section 404 motion. Doing so leads to a litany of problems. It rewrites Section 404 of the First Step Act, which authorizes a federal court to consider during resentencing only the changes created by the Fair Sentencing Act's amendments to the statutory sentencing range. It affords Johnson two bites at the exact same apple we found unappetizing five years ago. And it leads to quite arbitrary and harsh results for non-crack offenders who could conceivably benefit from a retroactive Guideline change but cannot use Section 404 as a stalking horse for all changes in the Guidelines. After all, there have been many retroactive amendments to the Guidelines, nearly all of which are not specific to crack cocaine. *See* U.S.S.G. § 1B1.10(d). Yet the majority opinion would afford covered crack offenders two opportunities to press for a sentencing reduction, with similarly situated non-crack offenders allowed just one.

II.

Beyond its error in calculating Johnson's initial Guidelines range, the majority opinion suffers from a more fundamental mistake.  Without explanation, it second guesses our 2011 and 2012 decisions on substantive reasonableness.  From the starting point of a 65-month upward variance, we are staring at almost the same exact legal questions the district court faced at Johnson's 2009 resentencing, and that we later faced in both *Johnson II* and *Johnson III*.  *See Johnson II*, slip op. at 4; *Johnson III*, slip op. at 4.  In *Johnson II*, we recognized that the district court, in imposing a sentence that was largely driven by Johnson's inability to be "deterred from criminal conduct by multiple arrests or shorter prison sentences," "carefully considered the sentencing factors of § 3553(a) and did not give inappropriate weight to factors that were not relevant to Johnson's circumstances or history." *Johnson II*, slip op. at 3–4.  And in *Johnson III*, we reaffirmed that "the district court permissibly imposed the above-guidelines sentence for the purpose of protecting the public, in light of Johnson's extensive criminal history." *Johnson III*, slip op. at 4.  "[F]lirt[ing]," yet refusing to grapple with "preclu[sion] by the law of the case doctrine," the majority opinion apparently disagrees with our prior conclusions. *United States v. Hairston*, 502 F.3d 378, 383 (6th Cir. 2007) (recognizing law of the case doctrine governs re-sentencings but declining to apply the doctrine because of the limits of an earlier ruling); *cf. United States v. Martinez-Martinez*, 738 F. App'x 31, 32 (2d Cir. 2018) (per curiam) (rejecting substantive reasonableness challenge under the First Step Act based on law of the case).  That disagreement purportedly is driven by intervening legal and factual developments, matters a court may consider in a Section 404 proceeding as part of its assessment of the 3553(a) factors. *See Maxwell*, 991 F.3d at 691.  *But cf. Concepcion v. United States*, 142 S. Ct. 54 (2021) (granting writ of certiorari to consider whether a district court "may consider intervening legal and factual developments" when deciding a Section 404 motion).  So what cataclysm occurred to justify overriding two sentencing determinations by the district court and this Court?

A.  Certainly nothing to do with Johnson's criminal history.  It is, after all, in the past.  And quite the history it is.  Johnson was in trouble with the law during his entire adult life, until he entered federal prison at the age of 36.  His crimes almost uniformly involved the use of firearms or wanton violence—even if his underlying charge did not reflect that fact.  Take, for

example, his 1997 charges for evading arrest and reckless endangerment. After stealing gasoline with an armed cohort, Johnson led police on a lengthy, high-speed chase where, after attempting to ram a police car several times, Johnson narrowly missed hitting a motorcyclist while driving on the wrong side of the road. After exiting the car, Johnson tried to choke a police dog. Or take another incident just over two years later, where an intoxicated Johnson led police on another car chase before wrecking his vehicle and unsuccessfully trying to flee the scene. For that, the most serious charges Johnson faced were, as before, evading arrest and reckless endangerment. And the nature of Johnson's crimes was eclipsed in severity perhaps only by their pace and intensifying nature. In a span of only a few years, Johnson committed more than 18 crimes, starting with simple firearm possession and escalating to gun use and two high speed car chases. The district court, in varying upward, based its sentence on the reasonable view that Johnson was undeterred by criminal prosecution and was on a trajectory to commit more and more violent crime. We affirmed on that same basis in *Johnson II* and *Johnson III*. *See Johnson II*, slip op. at 4; *Johnson III*, slip op. at 4.

Unwed to our prior decisions, the majority opinion today concludes that the Guidelines already account for Johnson's criminal history. Yes, the Guidelines' criminal history score accounts for some aspects of Johnson's criminal history—namely, the number of prior sentences and the length of those sentence. *See* U.S.S.G. § 4A1.1. But, as we have said on more than one occasion, a criminal history score may not account for a pattern of misconduct or the seriousness of prior offenses. *United States v. Johnson*, 934 F.3d 498, 501 (6th Cir. 2019); *see also United States v. Cechini*, 834 F. App'x 201, 205 (6th Cir. 2020) (recognizing that criminal history does not account for "patterns" of criminal activity or "unscored" criminal activity). Both of those attributes are clear in Johnson's criminal history. And notwithstanding the majority opinion's repeated citations to non-precedential opinions in this area, "[w]e have consistently rejected defendants' arguments that a district court cannot impose upward variances based on criminal history, simply because the Guidelines calculation already accounts for criminal history as a factor." *See United States v. Dunnican*, 961 F.3d 859, 881 (6th Cir. 2020).

B. If Johnson's criminal history is not a fair basis for snubbing our prior panel's assessment of these exact considerations, what else has changed in the intervening years since

Johnson's initial sentence to support the majority opinion's about face? Needless to say, none of the facts underlying his conviction have changed. As the district court understood when Johnson was first sentenced, his charges were a product of Chattanooga police executing a search warrant for a home on suspicion of drug trafficking. Upon knocking and announcing, Johnson ran to a bathroom and flushed evidence as he blocked law enforcement from the toilet. Officers found limited amounts of crack cocaine remaining in the apartment and a loaded .38 caliber revolver. Lacking any physical evidence to support more robust charges, the government relied on testimony from a co-conspirator to charge Johnson with trafficking in more than 50 grams of cocaine base. Although a jury ultimately did not accept the co-conspirator's testimony about the volume of crack Johnson was trafficking, it did convict Johnson on charges that he trafficked between 5 and 50 grams of crack cocaine while possessing a firearm to further his crimes.

Signaling that our earlier decisions failed to properly assess Johnson's crime, the majority opinion dismisses Johnson's case as nothing more than a "mine-run" drug trafficking crime. Maj. Op. at 17. It bestows that moniker by comparing Johnson's case to four other crack-cocaine sentence reductions. *See id.* at 12–13. But those cases, seemingly cherry-picked from the federal reporters, fail to reflect a large body of cases that "have upheld similar rejections of requests for First Step Act reductions." *United States v. Williams*, 817 F. App'x 164, 168 (6th Cir. 2020) (collecting cases). Not all crack cases, in other words, are one in the same. Consider the nature of Johnson's offense. If not for his brazen destruction of evidence in the midst of his arrest, Johnson may have been subject to a higher penalty under the Controlled Substances Act. (Nor was Johnson penalized for obstructing justice in his criminal sentence). Viewed in this light, Johnson is hardly the model felon who should benefit from the Fair Sentencing Act's reduction in the statutory penalties. More to the point, the majority opinion's musings about the nature of the crime do little to cast doubt on the substantive reasonableness of the 300-month sentence. The district court, remember, imposed that sentence due to Johnson's criminal history, not the nature of his crime, mine-run or otherwise. *Johnson II*, slip op. at 3–4 (holding that "the district court's conclusions with regard to the need for an above-guidelines sentence were not unreasonable" given that Johnson "had not been deterred from criminal conduct by multiple arrests or shorter prison sentences"); *Johnson III*, slip. op. at 4 (same).

C. What else could have changed since our panel decision a decade ago?  To be sure, time has passed since Johnson first entered federal prison, and his conduct in prison, we have previously held, is fair game for the district court. *See Maxwell*, 991 F.3d at 691.  But nothing in Johnson's record gives us either a factual or legal basis to suddenly deem his sentence substantively unreasonable.  The majority opinion praises Johnson for "not incurr[ing] any convictions or meaningful infractions while in prison" Maj. Op. at 16.  But not incurring any "convictions" presumably would be the baseline expectation for a prisoner, not something for which the prisoner is rewarded with a hearty congratulations and a dramatic decrease in his sentence. *See United States v. Hymes*, 19 F.4th 928, 934 (6th Cir. 2021) (recognizing the behavior that is "expected of federal prisoners" includes not having infractions and participating in prison programming) (citing *United States v. Gale*, 468 F.3d 929, 939 (6th Cir. 2006)). Indeed, federal sentencing law already affords prisoners credit to reduce a sentence for "satisfactory behavior."  18 U.S.C. § 3624(b).  And as to his record of infractions, the slippery term "meaningful" does considerable work in the majority opinion's assessment of Johnson's record.  Meaningful or not, Johnson received disciplinary sanctions seven times prior to his § 3582(c)(2) motion, *see* 718 F. App'x at 349, and, per the government's representations, he more recently was sanctioned for using drugs and possessing contraband while incarcerated. *Cf. United States v. Greenwood*, 521 F. App'x 544, 548 (6th Cir. 2013) (citing cases where even a limited number of disciplinary violations undermined an argument for a sentence reduction). What is more, the Bureau of Prisons classified Johnson as having a "high risk" of recidivism, the highest score under its PATTERN risk tool, which takes into account a prisoner's age, offense, criminal history, and record in prison, *see Male Pattern Risk Scoring*, Bureau of Prisons, https://www.bop.gov/inmates/fsa/docs/male_pattern_form.pdf (last visited Feb. 22, 2022).  The majority opinion ignores all of this and instead applauds the various coursework Johnson has undertaken while in prison.  That Johnson has studied "personal growth" and the Spanish language will no doubt benefit him upon his release.  But those commendable efforts, again, are little justification for dramatically advancing his release date. *See United States v. Monday*, 390 F. App'x 550, 556 (6th Cir. 2010) (recognizing that completing additional classes in prison does not "go beyond what would ordinarily be expected during incarceration").

Regardless, these arguments only echo ones that the district court faced in 2009, when Johnson argued for a lower sentence based on his maturation in prison. There, the district court acknowledged that Johnson was "doing well" while incarcerated. But the district ultimately was unmoved by such arguments because the underlying sentence was "driven by his criminal history." On appeal, we affirmed the district court's conclusion that any positive post-sentencing conduct was outweighed by Johnson's considerable criminal history. *Johnson II*, slip op. at 3–4.

D. Could the majority opinion be inspired by a change in the law? While the district court may, under our Section 404 precedent, consider intervening legal developments since the initial sentence while weighing the § 3553(a) factors, *see Maxwell*, 991 F.3d at 691, no *relevant* legal developments have occurred since 2009. True, the Fair Sentencing Act did alter the statutory penalties for the underlying crime, and the 2014 amendment to the Guidelines did adjust the default sentencing range for that crime. But the district court's 2009 upward variance—as that court confirmed in both 2017 and 2020—was driven from the get-go by Johnson's extensive and unique criminal history (not by default penalties for Johnson's crime). And we affirmed the district court's upward variance even after the Fair Sentencing Act's enactment and the Guidelines changes. *See Johnson IV*, 718 F. App'x at 349. Post-2009 legal developments, it follows, are no basis for rejecting our prior holdings. Either way, an abstract aversion to a sentence at the top (as opposed to merely near the top) of the statutory sentencing range does not make a previously reasonable sentence unreasonable. *See United States v. Foreman*, 958 F.3d 506, 516 (6th Cir. 2020) (concluding that a district court did not commit sentencing error when, on resentencing, it opted to retain part of its original sentence, even when the Fair Sentencing Act altered the corresponding statutory range). The alternative view—that the Fair Sentencing Act's changes to statutory federal drug crime penalties alone necessitates altering an earlier sentencing determination—would amend the First Step Act under the guise of interpretation. After all, the First Step Act squarely makes any potential sentence reduction discretionary. *See* First Step Act, § 404(c) ("Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.").

E. So what actually has changed in the last decade? To my eye, nothing more than perhaps additional good behavior on Johnson's part, some foreign language and personal

development coursework, and, pointedly, the panel deciding his case on appeal. With no new material factual or legal developments, the only thing different about Johnson's latest request for resentencing is his audience. And receptive that audience has proven to be. By all accounts, the majority opinion feels entirely unencumbered by our prior rulings or by the collective wisdom of our six Article III colleagues who previously reviewed the district court's sentence, to say nothing of the district court itself. Johnson, after all, merely repeats arguments he has been making unsuccessfully for over a decade. Perhaps the majority opinion believes that Johnson's sentence was too long at its inception. But mere disagreement with an earlier panel has never before been a sufficient basis for departing from its reasoning. *See Pepper v. United States*, 562 U.S. 476, 506 (2011) (recognizing that we cannot disturb our prior decisions absent a compelling justification that works a manifest injustice); *Gragg v. Somerset Tech. Coll.*, 373 F.3d 763, 767 (6th Cir. 2004) ("Our power to reach a result inconsistent with a prior decision reached in the same case is to be exercised very sparingly, and only under extraordinary conditions." (quotation marks omitted)). Today, however, history and practice have met their match.

## III.

Even setting aside the unnecessary whiplash the district court will undoubtedly feel after having thrice been affirmed with respect to Johnson's sentence, the majority opinion is jarring in an even more basic way: it misunderstands how we review a sentence for substantive reasonableness. We are a court of review, not first view. And our review naturally has its limits, as a sentencing, with its "profound human dimensions," "cannot be captured in mere transcripts and statistics." D. Brock Hornby, *Speaking in Sentences*, 14 Green Bag 2d 147, 147 (2011). Unlike the district court, we do not live with these cases—in this instance, for more than 15 years. Nor have we had a front row seat at Johnson's trial or his various sentencings. We have not heard him allocute. We have not listened to his family and friends speak on his behalf. We could never boast to being as familiar with Johnson's record as the district court. And unlike the United States Attorney who considers Johnson's record serious enough to warrant the upward variance, we are poorly positioned to assess whether pursuing the upward variance here

is prudent in terms of protecting the public from the accompanying threats that may arise when a prisoner is released prematurely.

It is for these reasons that we neither review the record de novo nor substitute our judgment for that of the district court or the prosecutor. *See Gall v. United States*, 552 U.S. 38, 59 (2007) ("But it is not for the Court of Appeals to decide de novo whether the justification for a variance is sufficient or the sentence reasonable."). Instead, substantive reasonableness challenges "face an uphill climb," as we grant "considerable deference to the sentence imposed by the district court." *United States v. Faulkner*, 926 F.3d 266, 273 (6th Cir. 2019); *see also United States v. Thomas*, 933 F.3d 605, 613 (6th Cir. 2019) (observing that criminal defendants "must surmount a high bar to succeed on a substantive-reasonableness challenge even to an upward variance"). Employing an abuse of discretion standard, we will vacate a sentence on substantive unreasonableness grounds only if we are left with a "definite and firm conviction" that the district court made an obvious error. *United States v. Moon*, 808 F.3d 1085, 1090 (6th Cir. 2015). So long as the district court gave "reasoned consideration" to the relevant sentencing factors, we should affirm. *United States v. Ushery*, 785 F.3d 210, 224 (6th Cir. 2015).

The majority opinion only pays lip service to this governing standard. In practice, it applies an altogether different one, requiring a district court to justify an upward variance with a "sufficiently compelling" reason. Maj. Op. at 16. The majority opinion then applies this standard to reach the following three conclusions. One, Johnson's underlying crime is a mine run offense that "does not" "stand out from similar cases." Maj. Op. at 12. Two, Johnson's criminal history is "typical" of other First Step Act defendants and already accounted for under the Guidelines. *Id.* at 13. And three, Johnson should not have to wait four additional years, until he is in his 50s, for his release. *Id.* at 15. True enough, the district court or prosecutor could have adopted those positions in the first instance. Yet they did not. Time and time again, both the government and the district court have concluded that Johnson is a dangerous recidivist who should be incapacitated until he ages out of criminality. *See, e.g.*, R. 166, PageID#385 ("With a 300-month sentence, Defendant will age . . . . By imposing this sentence, the Court aims to protect the public during the most active years of Defendant's life and to allow Defendant to develop the skills needed to be a peaceful member of society.") There is no obvious, reason-

lacking error in those conclusions. *See Ushery*, 785 F.3d at 224. Out of respect for both the district court and the government, a respect enshrined in our deferential standard for substantive reasonableness review, it is simply inappropriate for an appellate court to substitute its judgment for that of those on the "front line." *United States v. Phinazee*, 515 F.3d 511, 521 (6th Cir. 2008).

One final points bears emphasis. The majority opinion seems troubled that Johnson's sentence amounts to a 115-month upward variance over the current Guidelines range, what it calculates to be a 38% increase. Maj. Op. at 14 n.8. But even accepting the (erroneous) 115-month mark as the proper starting metric, we do not apply a "rigid mathematical formula" to judge the wisdom of a variance from the Guidelines range; each case involves its own facts and should be judged according to its terms. *See Gall*, 552 U.S. at 47. And even if we did, a 38% upward variance is hardly eyebrow raising. *See, e.g.*, *United States v. Vowell*, 516 F.3d 503, 511–13 (6th Cir. 2008) (affirming 242% variance); *United States v. Stewart*, 628 F.3d 246, 260–61 (6th Cir. 2010) (affirming 100% variance); *United States v. Fievet*, 808 F. App'x 358, 359 (6th Cir. 2020) (affirming 75% variance). Nor is the fact that Johnson's sentence now abuts the statutory maximum. *See, e.g.*, *United States v. Kirby*, 418 F.3d 621, 628 (6th Cir. 2005) (holding that imposition of the statutory maximum term of imprisonment is justified for a defendant who repeatedly transgresses the law). And any broader antipathy toward upward variances is simply beyond our bailiwick. After all, "a judge who likes every result he reaches is very likely . . . reaching for results he prefers rather than those the law compels." *A.M. v. Holmes*, 830 F.3d 1123, 1170 (10th Cir. 2016) (Gorsuch, J., dissenting). Instead of searching for a preferred result de novo, we must afford "great[] respect" to the district court's repeated and thoughtful explanations for why Johnson's unique criminal history makes his case different than the typical one. *United States v. Boucher*, 937 F.3d 702, 708 (6th Cir. 2019).

*    *    *    *    *

No matter the obstacles—whether the text of the First Step Act, controlling precedent, three prior panel rulings, the absence of any material factual or legal changes since the district court's 2009 sentence, our customary deference to the district court's judgment—the majority opinion is unflinching in its desire to see Johnson resentenced. As the case returns to the district

court, that court now has the opportunity to investigate with more consideration some of the issues it justifiably did not explore in any detail to date.  Chief among them are Johnson's history of infractions while in prison, the Bureau of Prison's classification of Johnson's recidivism risk, and the nature of Johnson's underlying crime.  The district court, moreover, will need to take heed of any intervening guidance from the Supreme Court.  *See Concepcion v. United States*, 142 S. Ct. 54 (2021).  In light of those considerations, I doubt Johnson is entitled to a sentence reduction.  But whatever sentence the district court imposes, hopefully proper respect is paid to that assessment in any future appeal.