NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0219n.06

Case No. 23-5684

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) | |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY |
| ERICH MATHES STORCK, | ) | |
| Defendant-Appellant. | ) ) ) | O P I N I O N |

BEFORE: COLE, CLAY, and THAPAR, Circuit Judges.

COLE, J., delivered the opinion of the court in which CLAY, J., joined. THAPAR, J. (pp. 16–19), delivered a separate dissenting opinion.

COLE, Circuit Judge. Erich Mathes Storck was convicted of possession of marijuana and two counts of felon-in-possession of a firearm. The United States Sentencing Guidelines recommended 51–63 months' imprisonment, but the district court imposed the statutory maximum of 120 months. Storck challenges his sentence, arguing the district court: (1) did not credit him for acceptance of responsibility, (2) impermissibly relied on his medical records to conclude he continued to pose a danger, and (3) failed to justify the upward variance from the Guidelines range. He also challenges his firearm convictions as unconstitutional under the Second Amendment. We affirm in part, reverse in part, vacate the sentence, and remand for resentencing.

I.

On May 25, 2020, the Boyle County Sherriff's Department found Storck asleep next to his motorcycle. Storck failed a field sobriety test and was arrested. The officers found a loaded pistol in Storck's motorcycle.

On November 8, 2021, the Nicholasville Police Department responded to a report that bullets originating from the house next door had entered Tiffany Corman's home through an upstairs window. Officers located Storck in the upstairs bathroom closet of the house next door. Storck refused commands to put down his weapons and exit the closet. After hearing a gunshot, the officers retreated. Storck fired approximately 35 additional rounds before surrendering an hour later. Two rounds had "entered the upstairs bathroom window and penetrated a wall" in Corman's house. (Op., ECF No. 117, PageID 1282.) Officers also found two firearms, multiple types of ammunition, marijuana, and marijuana growing materials in Storck's home. (*Id.* at PageID 1283.)

No one in the Corman residence was physically injured, but four of the Corman children were at home during the incident and still struggle to feel safe. At sentencing, defense counsel explained that Storck's intent that day was to commit suicide.

Storck was charged with: felon in possession of a firearm in May 2020, pursuant to 18 U.S.C. § 922(g)(1) (Count I); felon in possession of a firearm during the November 2021 incident (Count II); possession of less than 50 kilograms of marijuana with intent to distribute, pursuant to 21 U.S.C. § 841(a)(1) (Count III); and possession of a firearm in furtherance of a drug trafficking crime, pursuant to 18 U.S.C. § 924(c)(1) (Count IV). If the government would dismiss Count IV, Storck was willing to plead guilty to Counts I and II and to a lesser included offense for possession of marijuana under Count III—later submitted to the jury upon Storck's request as an

alternative drug offense[1] pursuant to 21 U.S.C. § 844. The government rejected the offer and the case proceeded to trial. A jury found Storck guilty on Counts I, II, and the lesser included offense under Count III, and not guilty on Count III as charged and Count IV.

Storck objected to the Presentence Investigation Report (PSR), arguing that he should have received a two-point offense level reduction for acceptance of responsibility under Guidelines § 3E1.1 because he offered to plead guilty to Counts I, II, and lesser III before trial. Although Storck conceded guilt for the November 2021 firearm and lesser marijuana charge at trial, the district court overruled Storck's objection, because, while Storck could have pleaded guilty to all three counts, he put the government to its burden of proof.

The Guidelines range for Storck's convictions was 51–63 months. Storck sought a within-Guidelines sentence, and the government sought consecutive sentences at the top of the Guidelines. The district court sentenced Storck to 120 months in prison for the November 2021 firearm possession, 63 months for the May 2020 firearm possession, and 12 months for the lesser marijuana charge—all to run concurrently. The district court reasoned that Storck's history and characteristics, and the nature and circumstances of the offense, justified an upward variance for the November 2021 firearm possession. It explained that Storck turned to controlled substances when having "emotional issues" and became violent and paranoid. (Sentencing Tr., ECF No. 140, PageID 1934, 28:13–20; 1935, 29:22–24; 1936, 30: 3–7; 1938, 32:22–33:1.)

Storck had three previous assault convictions: (1) shooting someone in 1994, that resulted in three years' imprisonment; (2) spousal abuse in 2000; and (3) aggravated assault in 2001. Other than two speeding tickets, however, Storck was not convicted of another offense until

---

[1]S*ee Keeble v. United States*, 412 U.S. 205, 208 (1973) (explaining that a criminal defendant "is entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater.").

2019—18 years later—when he violated the terms of a no-contact order. The district court reasoned that Storck's criminal history demonstrated a lack of respect for the law and an upward variance was necessary for specific deterrence.

Storck was also involuntarily hospitalized four times between 1993 and 2002, upon the petition of his family members. This included hospitalizations for: (1) attacking, choking, and threatening to kill his mother; (2) attacking and attempting to force his wife to overdose on cocaine; (3) threatening to kill himself; (4) failing to take his medication; (5) using marijuana, Valium, crack cocaine, and intravenous drugs; and (6) and acting erratically. During one of the visits, he broke a hospital staff member's jaw.

In 2019, he was hospitalized after pulling a gun on his son when his son confronted him about his paranoid behavior. Storck believed everyone was out to get him, was obsessed with conspiracy theories, and threatened to "kill people before this is over." (*Id.* at PageID 1937, 32:17–22.) Storck alleged that his recent substance abuse relapse and behavior resulted from losing visitation rights with his daughter. Storck also acknowledged past cocaine and marijuana use.

Storck's mental health symptoms often resolved within a day of being hospitalized. He did not require mood stabilizing medications, indicating his symptoms were caused by substance abuse. Although Storck responded well to treatment, the district court reasoned that he turned to alcohol and drugs when mental health issues arose, resulting in his violent outbursts.

The district court also stressed Storck's "extreme wanton and reckless and willful behavior" by shooting multiple rounds in the direction of a neighbor's house. (*Id.* at PageID 1940, 34:6–9.) It stated that the shooting "could have been much worse," because one of the Corman children had been in the bathroom right before the bullets came through the window. (*Id.* at

PageID 1940, 34:10–14.)  Because Storck had a proclivity to possess firearms, the district court concluded he might attempt to use them again in the future.

## II.

When evaluating a sentencing challenge, we must "first ensure that the district court committed no significant procedural error."  *Gall v. United States*, 552 U.S. 38, 51 (2007).  A sentence is procedurally reasonable if the district court "properly calculate[s] the guidelines range, treat[s] the guidelines as advisory, consider[s] the [18 U.S.C.] § 3553(a) factors and adequately explain[s] the chosen sentence."  *United States v. Grossman*, 513 F.3d 592, 595 (6th Cir. 2008).

## A.

First, Storck argues that the district court impermissibly relied on his medical records to conclude he was untreatable and deserving of an upward variance.  Consideration of an impermissible sentencing factor constitutes a procedural error.  *United States v. Cabrera*, 811 F.3d 801, 809 (6th Cir. 2016).

Storck did not object to a procedural error at sentencing.  Defense counsel simply stated: "[F]or the record, we do object to the Court's variance upward in this case."  (Sentencing Tr., ECF No. 140, PageID 1952, 46:3–6.)  Therefore, we review for plain error.  *United States v. Hatcher*, 947 F.3d 383, 389 (6th Cir. 2020) (internal quotations omitted) (applying plain error review where defendant stated that he "objected 'to the court's upward variance'" but did not object to "any specific procedural deficiencies at the sentencing hearing").  The defendant must establish: (1) an error, (2) that was "plain," (3) that affected "substantial rights," and (4) that seriously impacted "the fairness, integrity or public reputation of judicial proceedings."  *Greer v. United States*, 593 U.S. 503, 507–08 (2021) (citations omitted).

Storck maintains his medical records do not demonstrate that he is "presently dangerous and untreatable," because his depression improved substantially when treated with "a combination of medication and psychotherapy." (Appellant Br. 26.) This assertion, however, misconstrues the record. The district court acknowledged that Stork's symptoms were substance-induced, often resolved when he no longer "experience[ed] the effect of the drug," and did not require treatment "with mood stabilizing medications." (Sentencing Tr., ECF No. 140, PageID 1936, 30:13–19.) Although, Storck is treatable, the district court concluded that his history of substance abuse when stressed, coupled with his possession of firearms, demonstrated future risk.

Storck relies on *United States v. Moses* to argue that the district court should have conducted a commitment proceeding instead of giving him an extended sentence. *Moses*, however, only found an upward sentencing departure based on public safety concerns inappropriate for a defendant in need of psychiatric treatment who was about to be released from confinement. 106 F.3d 1273, 1277–79 (6th Cir. 1997). Instead, a commitment proceeding, which provides for the "[h]ospitalization of a person due for release [from custody] but suffering from mental disease or defect," *see* 18 U.S.C. § 4246, is more appropriate. *Id.* at 1277–81.

First, *Moses* is inapplicable because Storck was sentenced to an upward variance, not a departure.[2] *United States v. Tolbert*, 459 F. App'x 541, 548 (6th Cir. 2012). Second, as part of the sentence, the district court recommended Storck participate in substance abuse and mental health treatment. Third, to support commitment, mental and emotional conditions must be "present to an unusual degree." U.S.S.G. § 5H1.3. In *Moses*, the defendant was schizophrenic, posed a "future danger . . . to the public," and was in "need [of] psychiatric treatment." *Moses*,

---

[2] A variance from the Guidelines occurs at the court's discretion pursuant to § 3553(a). *United States v. Denny*, 653 F.3d 415, 420 (6th Cir. 2011). A departure is a sentence outside the Guidelines range based on Chapter 5 of the Guidelines. *United States v. Jordan*, 544 F.3d 656, 671 n. 12 (6th Cir. 2008).

106 F.3d 1279–80.  Storck does not demonstrate how his substance abuse and mental health issues are atypical.  Further, Storck never sought a downward departure to a treatment program but asked for a sentence within the Guidelines.

Finally, "[w]hile a district court should, in the sentencing context, give consideration to a defendant's mental illness, the court is not required" to decrease a sentence based on that illness.  *United States v. Owens*, 940 F.3d 308, 317 (6th Cir. 2019).  Here, the district court permissibly concluded that Storck's past treatment nonadherence was evidence of future danger.  *See United States v. Hunter*, 842 F. App'x 999, 1006 (6th Cir. 2021) (finding no abuse of discretion where the district court inferred from the defendant's past failure to adhere to mental health treatment that he may pose a future danger).  Therefore, the district court did not plainly err as to this issue.

B.

Next, Storck argues he should have received a two-point offense level reduction for acceptance of responsibility.  Of the four counts charged, he was found guilty of Counts I, II, and the lesser included offense of Count III—the offenses for which he was willing to plead guilty.  Storck argues that, but for the government's rejection of his proposal, he would have been eligible for the credit for at least Counts II and lesser included III—the counts for which he conceded guilt at trial.

We have applied both de novo and clear error review to acceptance of responsibility challenges to a sentence.  *United States v. Thomas*, 933 F.3d 605, 611 (6th Cir. 2019).  De novo review requires us to review anew "the district court's interpretation of the Guidelines."  *United States v. Tatum*, 518 F.3d 369, 372 (6th Cir. 2008) (quotation omitted).  Clear error occurs only when we are left with the "definite and firm conviction that a mistake has been committed" by the district court.  *United States v. Castano*, 906 F.3d 458, 467 (6th Cir. 2018) (citations omitted).

A defendant is entitled to a two-level reduction if he accepts "responsibility for his offense." U.S.S.G. § 3E1.1(a). The reduction does not apply when the defendant "puts the government to its burden of proof at trial by denying the essential factual elements of guilt." *Id.* at cmt. n.2. A defendant remains eligible for the reduction if he went "to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct)." *Id.*

Storck's challenges to Counts I and II fail under both de novo and clear error review. The reduction is inapplicable to Count I, because Storck challenged the factual basis for the May 2020 firearm possession in opening and closing statements. U.S.S.G. § 3E1.1 cmt. n.2. Second, Counts I and II were properly grouped for purposes of sentencing because they involved "substantially the same harm"—i.e., they involved "the same act or transaction" or "offense behavior" that is "ongoing or continuous in nature." U.S.S.G. § 3D1.2(a), (d). Where "multiple counts are combined," a "defendant must accept responsibility for all counts before he is entitled to a reduction." *United States v. Chambers*, 195 F.3d 274, 278–79 (6th Cir. 1999). Because Storck did not accept responsibility for Count I, the district court, grouping Counts I and II, appropriately denied acceptance of responsibility for Count II.

Storck's challenge to Count III meets the criteria for reversible error under clear error review, so we analyze his claim under the more deferential standard. Lesser Count III for possession of marijuana was not grouped. For lesser Count III, the government needed only to prove that Storck knowingly and intentionally possessed the marijuana. Storck did not put the government to its burden of proof on lesser Count III, admitting "[i]t's not really in dispute that he was growing pot in his closet." (Sentencing Tr., ECF No. 138, PageID 1478, 20:23–24; 1479, 21: 21–22; 1482, 24:16–21.) Indeed, after admitting to the essential elements of intentional possession

of marijuana, Storck asked for jury instructions on the lesser included offense. These facts demonstrate that Storck admitted to the lesser offense and was eligible for the acceptance of responsibility credit for lesser included Count III.

III.

We "should next consider the substantive reasonableness of the sentence imposed." *Gall*, 552 U.S. at 51. Storck argues that: (1) the district court put too much weight on his history and characteristics and the nature of the offense; and (2) that his 120-month sentence will result in sentencing disparities.

We review for abuse of discretion. *United States v. Perez-Rodriguez*, 960 F.3d 748, 753 (6th Cir. 2020). A "sentence may be substantively unreasonable if the district court chooses the sentence arbitrarily, . . . or unreasonably weighs a pertinent factor." *United States v. Brooks*, 628 F.3d 791, 796 (6th Cir.), *cert denied*, 564 U.S. 1044 (2011). We assess "whether the length of the sentence is 'greater than necessary' to achieve the sentencing goals set forth in 18 U.S.C. § 3553(a)." *United States v. Tristan-Madrigal*, 601 F.3d 629, 632–33 (6th Cir. 2010) (citations omitted). Our review is deferential, but we consider the totality of the circumstances. *United States v. Demma*, 948 F.3d 722, 727 (6th Cir. 2020).

Sentences that deviate from the Guidelines are not presumed reasonable. *United States v. Herrera-Zuniga*, 571 F.3d 568, 582 (6th Cir. 2009). Though the Guidelines are not mandatory, the district court "must give serious consideration to the extent of any departure from the Guidelines and must explain [its] conclusion that . . . an unusually harsh sentence is appropriate in a particular case." *Gall*, 552 U.S. at 46. The justification must be "sufficiently compelling to support the degree of variance." *Perez-Rodriguez*, 960 F.3d at 754 (quoting *Gall*, 552 U.S. at 50). This should include an explanation of "how the present case is different from the typical or mine-

run case" within the "'heartland' to which the Commission intends individual Guidelines to apply." *Id.* (quoting *Kimbrough v. United States*, 552 U.S. 85, 109 (2007)). While the district court is granted substantial discretion to fashion a sentence, this discretion is not limitless. *Id.*

"A mine-run case is not a theoretical, minimally culpable offense; it is a normal case under the governing Guidelines range, which is calculated to incorporate the crime at issue, the offense level, and the criminal history category." *Id.* at 754–55 (concluding that defendant with prior convictions who had entered the country illegally multiple times and used a fictitious name, like 92% of like offenders, represented a "heartland" case and an upward variance was unjustified).

A review of offenders sentenced under U.S.S.G. § 2K2.1 in 2021, like Storck, found that: (1) 60.6% of firearms offenders have a prior conviction for a violent offense compared to only 29% of all other offenders; (2) of firearms offenders with prior violent convictions, 49.4% were convictions for assault; (3) in more than 29.1% of felon-in-possession cases the gun was used in connection with another felony; (4) 49.6% of offenders were sentenced within the Guidelines range, which is 9.7% higher than all other offenders; (5) only 4.3% of sentences were above the Guidelines range; and (6) the average sentence for firearms offenders with prior violent convictions was 44 months, with the average Guidelines minimum being 47 months.[3] Further, 69% of firearms offenders recidivated as compared to only 45.1% of all other offenders.[4]

The dissent argues, without support, that national sentencing statistics provide a shaky foundation for our analysis. We have explained, however, that national sentencing data should serve "as a starting point . . . 'to avoid unwarranted sentencing disparities.'" *United States v. Stock*,

---

[3] United States Sentencing Comm'n, *What Do Federal Firearms Offenses Really Look Like?* at 2–3, 15, 20, 23, 30 (July 2022), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications /2022/20220714_Firearms.pdf.

[4] United States Sentencing Comm'n, *Recidivism of Federal Firearms Offenders Released in 2010* at 6 (Nov. 2021), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20220209 _Recidivism-Firearms.pdf.

685 F.3d 621, 629 n. 6 (6th Cir. 2012) (quoting 18 U.S.C. § 3553(a)(6)). Storck is on par with other firearm offenders, yet he received a much higher sentence than the national average. *See United States v. Lightning*, 835 F. App'x 38, 42 (6th Cir. 2020) (finding that district court's statement that recidivating offender set himself apart from other offenders in his criminal category was "backward" as those characteristics were what made defendant's case a mine-run). Because this is a mine-run case, it resembles the "heartland to which . . . [the] Guidelines [] apply." *United States v. Johnson*, 26 F.4th 726, 736 (6th Cir. 2022) (quoting *Perez-Rodriguez*, 960 F.3d at 754) (internal quotations omitted).

The district court unduly weighed Storck's history and characteristics, the nature of the offense, and the need for specific deterrence. *See* 18 U.S.C. § 3553(a). And it "gave too little weight to . . . 'the need to avoid unwarranted disparities among defendants with similar records who have been found guilty of similar conduct.'" *Johnson*, 26 F.4th at 736 (quoting 18 U.S.C. § 3553(a)(6)). "A sentence may be substantively unreasonable where the district court . . . giv[es] an unreasonable amount of weight to any pertinent factor." *United States v. Martinez*, 588 F.3d 301, 328 (6th Cir. 2009) (alternation in original; internal quotation marks omitted).

Our ruling in *United States v. Warren* offers a helpful comparison. In *Warren*, we found that an upward variance of roughly double the Guidelines range for a felon-in-possession case was substantively unreasonable. 771 F. App'x 637, 643 (6th Cir. 2019). There, the defendant had "11 prior offenses" and committed another violent offense while awaiting sentencing. *Id.* at 638–39. These offenses were continuous and included incidents in which Warren shot the victim point-blank and shot at a vehicle carrying two of his family members. *Id.* at 644 (Batchelder, J., dissenting). We concluded, however, that the district court "insufficiently distinguished Warren

from other offenders in the same criminal history category" and focused too heavily on his criminal history—issues already accounted for in the Guidelines. *Id.* at 641–42.

If Warren's extensive and continuous criminal history was already accounted for by the Guidelines, Storck's lesser criminal history that included an 18-year gap between convictions is also accounted for in the Guidelines. The dissent ignores that Storck had no charges or convictions for violent acts between 2001 and 2019. *Cf. Perez-Rodriguez*, 960 F.3d at 759–60 (explaining that a lengthier sentence was appropriate because defendant had illegally reentered the country multiple times in short succession, which was unaccounted for in the Guidelines) (Murphy, J., dissenting). The district court can consider Storck's criminal history, but the Guidelines calculation of a criminal history category of I incorporates as a mitigating factor, the extended passage of time between Storck's previous and current offenses. *See United States v. Bistline*, 665 F.3d 758, 767 (6th Cir. 2012) (explaining that an extreme variance based on criminal history that is already accounted for in the Guidelines is inconsistent with the need to avoid unwarranted sentence disparities); U.S.S.G. §§ 4A1.1 cmt. nt. 1, 3; 4A1.2(c), (e)(3).

The district court also justified the upward variance for Count II by heavily weighing Storck's "extreme wanton and reckless and willful behavior" by shooting towards a neighbor's home and in the presence of police. (Sentencing Tr., ECF No. 140, PageID 1940, 34:6–9.) We have upheld a variance of similar magnitude, where "the Guidelines[] . . . fail[ed] to capture the seriousness of the defendant's offense conduct." *United States v. Stanton*, 850 F. App'x 953, 956 (6th Cir. 2021). For example, in *United States v. Rayyan*, the defendant was convicted of two nonviolent firearms offenses, resulting in a Guidelines range with a high-end of 21-months. 885 F.3d 436, 439–43 (6th Cir. 2018). We affirmed a 186% upward variance, however, because the defendant had "proclaimed his admiration for ISIS and terrorist violence on social media and

expressed to a confidential informant his regret at not having carried out a church shooting he had previously planned." *Stanton*, 850 F. App'x at 956 (citing *Rayyan*, 885 F.3d at 439–43).

Storck's Guidelines range was already increased because of the violent nature of his offense. Storck's base offense level increased by four levels because he used or possessed a firearm in connection with another felony offense.[5] U.S.S.G. § 2K2.1(b)(6)(B). While we acknowledge the trauma experienced by the Corman family, the Guidelines account for those aggravating factors. An upward variance is unjustified, especially where no one was physically injured.

The district court also pointed to Storck's history of substance-induced violence and psychiatric hospitalizations to conclude that he posed future danger and needed to be specifically deterred. Unlike other cases in which the defendant suffers from untreatable mental illness, the district court regularly acknowledged Storck's positive response to treatment. *See United States v. Bailey*, 438 F. App'x 467, 470–71 (6th Cir. 2011) (concluding that above-Guidelines sentence for defendant with extensive, violent history and antisocial personality disorder was appropriate because even though the condition could improve with age, there was no treatment available). Namely, Storck remained sober from 2002 to 2019. Therefore, Storck's medical history does not justify such an extreme variance from the Guidelines range.

Even though the district court stated that it considered whether Storck's sentence "would constitute an unwarranted sentencing disparity among defendants with similar records who have been found guilty of similar conduct," it did not explain how the November 2021 incident was so unusual as to justify nearly doubling the top-end Guidelines sentence. (Sentencing Tr., ECF No.

---

[5] At the time of sentencing, felony charges for Wanton Endangerment-First Degree related to the November 2021 incident were pending against Storck in Jessamine Circuit Court.

140, PageID 1944, 38:10–12.) Storck's sentence does not exceed the statutory maximum, but the maximum is not a "barometer for the reasonableness of the sentences imposed." *Perez-Rodriguez*, 960 F.3d at 756. Nor does a statutory maximum "satisfy concerns about unwarranted sentence disparities," especially where, as here, the district court imposed the greatest possible deviation from the Guidelines. *Warren*, 771 F. App'x at 642 (citing *United States v. Poynter*, 495 F.3d 349, 354–55 (6th Cir. 2007)).

"[O]ne of the principal functions of the Sentencing Reform Act of 1984 was to eliminate 'unwarranted sentenc[ing] disparities among defendants with similar records who have been found guilty of similar conduct.'" *Poynter*, 495 F.3d at 352 (alteration in original) (quoting 18 U.S.C. § 3553(a)(6)); *see also United States v. Tucker*, 473 F.3d 556, 564 (4th Cir. 2007) ("Although the risk of recidivism could justify an upward variance, the extreme increase reflects an exercise of judicial discretion of the kind that the Sentencing Act was designed to avoid."). Storck's situation is not so unique that the district court need not substantively consider the sentencing disparity this sentence causes.

Therefore, "our caselaw indicates that the court placed too much weight on the § 3553(a) factors concerning criminal history, [nature of the offense,] deterrence, and protection of the public from further crimes of the defendant, and that the court selected the sentence without properly considering sentencing disparities." *Perez-Rodriguez*, 960 F.3d at 758; *see also Johnson*, 26 F.4th at 741 (reversing district court's denial of a First Step Act sentence reduction, because it gave "too little weight" to the need to avoid unwarranted sentence disparities and "unduly weighed the nature of [the defendant's] offense, his criminal history and characteristics, and the need for the sentence to deter future criminal conduct and protect the public"). While these factors may support some upward variance, they fail to justify a variance of this magnitude.

IV.

Finally, Storck argues that his firearms convictions pursuant to 18 U.S.C. § 922(g)(1) were unconstitutional under the Second Amendment framework established in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022). Storck first raises this issue on appeal, so we review for plain error. *Greer*, 593 U.S. at 507. We reject Second Amendment challenges to 18 U.S.C. § 922(g)(1) under plain error review, because there is no "precedent explicitly holding that § 922(g)(1) is unconstitutional and because it is unclear that *Bruen* dictates such a result." *United States v. Johnson*, 95 F.4th 404, 417 (6th Cir. 2024). Therefore, Storck's constitutional challenge to his firearms conviction pursuant to § 922(g)(1) must fail.

V.

For the foregoing reasons, we affirm in part, and reverse as to Storck's challenges to the substantive reasonableness of his sentence and acceptance of responsibility reduction as applied to Count III. We vacate the sentence and remand for resentencing in accordance with the provisions of this opinion.

**THAPAR, Circuit Judge, dissenting**. Erich Storck has always been a violent man. Here's the highlight reel:

- He choked his mother and threatened to kill her.

- He broke the jaw of a hospital worker trying to help him.

- He shot a man in the knee.

- He robbed a restaurant.

- He pulled a gun on his son.

- He beat his wife multiple times. During one of the assaults, he broke her arm.

- In another, he tried to kill her. He held her hostage in a bathroom and forced her to take cocaine until—he hoped—she overdosed.

Yet Storck's criminal-history score reflects none of these incidents. It rates him as if he'd *never* committed a crime.

Storck's Guidelines range also fails to reflect the particularly violent nature of his underlying offense. On November 8, 2021, Storck locked himself in a bathroom with two guns and began shooting. Several bullets flew into a woman's home next door, shattering the window in the bathroom where a young child had just been. The woman gathered her four kids and desperately searched for a safe place to hide. Meanwhile, Storck ignored officers' instructions to surrender and continued firing, forcing police to retreat from the house. Over an hour, and thirty-five rounds later, Storck finally surrendered. During the ensuing search, officers found guns, drugs, and boxes of ammunition.

Considering Storck's protracted criminal history and reckless disregard for others' safety, the district court did what any reasonable jurist ought: vary upward. How does the majority conclude otherwise? It relies on an unpublished opinion and unbriefed statistics.

Start with the unpublished opinion. The majority relies on *United States v. Warren* to conclude the Guidelines properly reflect Storck's criminal history. 771 F. App'x 637 (6th Cir. 2019). If anything, *Warren* reinforces the reasonableness of the district court's upward variance. There, the Guidelines assigned a criminal history score of VI—the highest score possible—to a defendant with eleven past convictions. *Id.* at 638. Consequently, a variance wasn't necessary because the Guidelines range reflected the defendant's history. *Id.* at 643. Storck's case presents the opposite situation: despite his violence, Storck received a criminal history score of I, the lowest possible. And the lack of criminal convictions from 2001 to 2019 further confirms the inaccuracy of his criminal record, since Storck continued to commit uncharged acts of violence—such as forcing his wife to overdose on cocaine.

Next, the statistics. As an initial matter, it's hard to say the district court abused its discretion for failing to consider statistics that neither party presented. In any event, national statistics are a shaky foundation for calculating sentences. The whole point of sentencing is to impose a term of imprisonment that's appropriate given the *specific* circumstances of a defendant's crime. *See Rita v. United States*, 551 U.S. 338, 357 (2007); *Gall v. United States*, 552 U.S. 38, 50 (2007). Those specifics can be hard to appreciate on appeal from the lifeless, black-and-white appellate record. That's why we employ a deferential standard of review. And a handful of high-level national percentages are even less likely to reflect the particularities of any given case.

Big-picture problems aside, the majority's statistical arguments fail on their own terms. Start with the sentencing statistics. They show that around half (49.6%) of felon-in-possession defendants received a within-Guidelines sentence. *What Do Federal Firearms Offenses Really Look Like?* at 16 (July 2022), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2022/20220714_Firearms.pdf. So what? Our task is to

determine whether Storck's case fits within the "mine run" of cases. The mere fact that there *is* a mine run doesn't tell us how Storck's behavior compares. It doesn't tell us, for example, whether defendants receiving within-Guidelines sentences had similar criminal histories. Did they shoot at an occupied home? How many choked their mother? Beat their spouse?

What about the majority's two prior-conviction statistics? These show that 60.6% of firearm offenders had prior violent-felony convictions. *Id.* at 20. And 49.4% had been convicted of assault. *Id.* These statistics are relevant—they illustrate that, like Storck, some firearm offenders have prior assault convictions. But those statistics don't tell us how many previous assaults the typical defendant committed. Or how serious those past assaults were. Or whether the defendants fired dozens of shots in the vicinity of young children. Finally, and most importantly, the majority's statistics don't even tell us how many defendants with past assaults received within-Guidelines sentences.

The majority's final statistic supports the district court's variance. It shows that in only 29.1% of felon-in-possession cases, a defendant used a firearm in connection with another felony. *Id.* at 30. And the majority omits from its statistical account that in only 11% of cases did the defendant actually fire the gun. *Id.* at 31. In other words, 89% of defendants don't even fire their gun once, let alone thirty-five times into an occupied home. Storck is not your average criminal.

The rest of the report further underscores the uniqueness of Storck's case. In it, we learn that most felon-in-possession defendants are arrested after a long-term drug or firearm investigation. Rarely does an arrest occur in a dangerous, emergency scenario. Indeed, in only 9.1% of cases do police arrest a defendant after someone reports that he fired a gun. *Id.* at 32. And an even smaller number of defendants are actively firing when police arrive and disobey a direct command to stop. But of course, that's what happened here. Storck thus finds himself among the

most reckless of felon-in-possession offenders.  So, to the extent these high-level statistics are useful at all, they only confirm Storck's case is anything but "mine run."

One final note.  Ironically, the district court imposed a more lenient sentence than Storck's potential within-guidelines one.  The United States asked for consecutively run, top-of-the-guidelines sentences on each count—126 months for the gun crimes alone.  And that 126 months would have been entitled to the presumption of reasonableness.  Instead, the district court gave Storck a lower sentence than requested and is now reversed for failing to anticipate and rebut statistics neither party raised.

*    *    *

In conclusion, the district court correctly decided Storck's Guidelines range underrepresented his behavior and criminal history.  So it imposed an above-Guidelines sentence, one that accounts for his habit of terrorizing his loved ones and others trying to help him.  Under that sentence, the four children next door would have gotten a reprieve from seeing Storck back home sometime soon.  The district court's consideration of Storck's violence and concern for public safety was perfectly reasonable.  I would affirm.